MUSEUM ASSOCIATES d/b/a Los
Angeles County Museum of
Art, Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

Nos. 81–7695, 81–7789.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 8, 1982.
Decided Sept. 28, 1982.

Michael L. Jensen, Los Angeles, Cal., for petitioner.

Mirian Shapiro, Washington, D.C., for respondent.

Before GOODWIN and NELSON, Circuit Judges, and MARSHALL * District Judge.

* Honorable Consuelo B. Marshall, United States District Judge for the Central District of California, sitting by designation.

PER CURIAM.

Museum Associates petitions for review of the National Labor Relations Board's Decision that Museum Associates violated §§ 8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1) and (5) by refusing to bargain. The board cross-petitions for enforcement of its decision and order.

The issue is whether Museum Associates is so substantially controlled by a governmental subdivision that is exempt from the jurisdiction of the board under § 2(2) of the Act, 29 U.S.C. § 152(2).

Museum Associates is a nonprofit California corporation which operates the Los Angeles County Museum of Art. Pursuant to statutory authority to establish and maintain a museum of art[1], the Board of Supervisors of Los Angeles County provided for construction of the museum when it entered into agreements in 1958 and 1960 with Museum Associates. Museum Associates agreed to raise funds and construct the museum on land set aside by the county. Museum Associates completed and donated the building in 1965.

The 1958 and 1960 agreements specified that the Board of Trustees of Museum Associates would operate and maintain the museum. The board of supervisors does not select the board of trustees or the officers of Museum Associates. The executive committee of the board of trustees establishes Museum Associates' operating budget. Its operations are financed from state and federal grants, private benefactors and foundations.

The 1960 agreement provides that the county will bear the cost of maintaining the museum. Maintenance of the museum included the payment of salaries to employees determined by Museum Associates to be within the county area of responsibility. These were jobs related to the basic program and purpose of the museum. Due to budget restraints, the county had dropped a number of positions within its area of responsibility and refused to fund new positions. In 1974, Museum Associates began to fund a number of the positions the county dropped from its payroll. Since 1974, Museum Associates has continued to fund positions dropped by the county in order to avoid curtailment of museum programs. Although the board of supervisors later agreed to resume funding 16 positions, the county has not yet done so.

The county has about 180 employees of the museum on its payroll. Forty other salaries were, until recently, paid from the federally-funded CETA program; Museum Associates has 75 employees on its payroll, including three audiovisual assistants. While the audiovisual technicians have been treated as within the county area of responsibility, they are paid and supervised by Museum Associates.

Moving Picture Projectionists, Local 150, of the International Alliance of Theatrical and Stage Employees ["IATSE"], has filed a petition seeking certification as the bargaining representative of the audiovisual

1. Cal. Pub. Res. Code §§ 5120 and 5137(c) provide:

"§ 5120. Establishment of museum; exercise of powers by board of supervisors

The board of supervisors of any county may by ordinance declare its intention to establish and maintain a museum of history, science, art, or similar objects. After the ordinance has taken effect, the board may exercise any or all of the powers provided in this article, directly or by agents under its direction and control. The board may exercise any other power necessary and proper to promote the objects and purposes of a museum devoted to acquisition, exhibition, and utilization of scientific, artistic, historical, or similar material."

§ 5137(c):
"In every instance of such delegation of power the governing body of the city or county shall require:

. . . . .

"(c) Determination of policy questions. That all questions involving the determination of policy or the exercise of discretion in the management, operation, maintenance, or regulation of the gallery or museum shall be referred to the governing body of the city or county, together with the recommendations of the donor or the board of directors or managers thereon, for determination by the governing body of the city or county."

assistants at the museum. Museum Associates has contended that it is exempt from the jurisdiction of the board because the county controls the operation of the museum.

The acting regional director for Region 31 concluded that the board could exercise jurisdiction over Museum Associates. Museum Associates then filed for review and stay of election with the board on December 19, 1980. The board denied the request on January 14, 1980. After an election, the unit designated Local 150 as its representative, and the regional director certified the Local. Museum Associates has refused to bargain with Local 150.

 Section 2(2) of the Act, 29 U.S.C. § 152(2) [2] exempts any "state or political subdivision" from the provisions of the Act. The board has the initial responsibility for defining whether an employer is a "political subdivision" for the purpose of § 2(2). *NLRB v. Natural Gas Utility District*, 402 U.S. 600, 604 605, 91 S.Ct. 1746, 1749, 1750, 29 L.Ed.2d 206 (1971); *Zapex Corp. v. N.L.R.B.*, 621 F.2d 328, 332 (9th Cir. 1980). The board's determination "must be accepted by reviewing courts if it has a reasonable basis in the evidence and is not inconsistent with the law." *Labor Board v. Atkins & Co.*, 331 U.S. 398, 403, 67 S.Ct. 1265, 1268, 91 L.Ed. 1563 (1947). *Accord: Zapex Corp. v. N.L.R.B.*, 621 F.2d at 332.

The Board has construed the statutory exemption under § 2(2) narrowly. *N.L.R.B. v. Austin Development Ctr., Inc.*, 606 F.2d 785, 789 (7th Cir. 1979). The Board defines political subdivision (1) to be an entity created directly by the state so as to constitute a department or administrative arm of the government, or (2) an entity administered by individuals who are responsible to public officials or to the general public. *Id.; N.L.R.B. v. Highview, Inc.*, 590 F.2d 174, 176 (5th Cir.), *modified on other grounds*, 595 F.2d 339 (5th Cir. 1979);

*Compton v. Nat. Maritime U. of America, AFL–CIO*, 533 F.2d 1270, 1274 (1st Cir. 1976). The Supreme Court approved the two-prong test but indicated that this test does not necessarily define the boundaries of the "political subdivision" exemption. *NLRB v. Natural Gas Utility District*, 402 U.S. at 605, 91 S.Ct. at 1750; *N.L.R.B. v. Austin Developmental Ctr., Inc.*, 606 F.2d at 789.

Museum Associates does not claim to be a political subdivision. Instead it argues that it is exempt from the Act because it is so substantially controlled by the county that it can neither bargain meaningfully nor implement effectively a collective bargaining agreement with the Union.

There are cases where the board and courts have declined to extend jurisdiction in situations where a government funded or regulated employer lacks sufficient autonomy over working conditions to enable it to bargain efficaciously with the Union. The employer will not be required to engage in a mere exercise in futility. *Rural Fire Protection Co.*, 216 N.L.R.B. 584, 585–6 (1975). *Accord: Truman Medical Center v. N.L.R.B.*, 641 F.2d 570, 573 (8th Cir. 1981); *N.L.R.B. v. Austin Developmental Center*, 606 F.2d at 789; *N.L.R.B. v. Pope Maintenance Corp.*, 573 F.2d 898, 902 (5th Cir. 1978); *Compton v. Nat. Maritime U. of America, AFL–CIO*, 533 F.2d at 1275; *Herbert Harvey, Inc. v. N.L.R.B.*, 424 F.2d 770, 774 (D.C. Cir. 1969).

 The reviewing court will uphold a board determination that the employer has sufficient control over labor relations to warrant exercising jurisdiction under the Act as long as the determination has a reasonable basis in the evidence and is not contrary to law. *N.L.R.B. v. St. Louis Comp. Neighborhood Health*, 633 F.2d 1268, 1272 (8th Cir. 1980), *cert. denied*, 454 U.S. 819, 102 S.Ct. 99, 70 L.Ed.2d 89 (1981); *N.L.R.B. v. Austin Developmental Ctr., Inc.*,

---

**2.** Section 2(2) of the Act, 29 U.S.C. § 152(2), states in pertinent part:

"(2) The term 'employer' includes any person acting as an agent of an employer, directly or indirectly, but shall not include the United States or any wholly owned Government corporation, or any Federal Reserve Bank, or any State or political subdivision thereof . . . ."

606 F.2d at 790; *N.L.R.B. v. Highview, Inc.,* 590 F.2d at 178; *Compton v. Nat. Maritime U. of America, AFL–CIO,* 533 F.2d at 1275. We cannot say that the board has no foundation in the evidence for its determination that Museum Associates had sufficient control over labor relations to allow for meaningful collective bargaining under the Act. Neither can we say that the board acted contrary to the law.

The record indicates that Museum Associates is not dependent on the county for its operating revenues. The county's budget allocations are a factor in the way Museum Associates decides to use its own funds, but not the only factor. When Museum Associates has chosen to wait until the county completed its budget process, the record indicates that it has the power to take interim measures in matters affecting employees. Furthermore, there is no evidence that the county's power to audit affects Museum Associates' ability to bargain with the union.

Museum Associates also alleges that it cannot bargain effectively because the county requires it to maintain wage parity between county employees and its own employees. The record fails to substantiate this contention. Museum Associates determines the wages and benefits of its employees. Museum Associates also contends that the 1958 agreement gives the county the right to compel Museum Associates to eliminate privately-funded positions. Short of the county actually taking over these positions, there is no factual basis for asserting that the county can control the wages and benefits of Museum Associates' employees. At the time of the board's decision there was no evidence that the county intended to begin funding the audiovisual positions in the future.

In an emergency motion, after the briefs were filed, Museum Associates claimed that the board of supervisors has recently approved a budget in which the county will reassume a substantial portion of the funding for a number of positions including the audiovisual assistants. If the county does take over the funding for audiovisual assist-

ants, then Museum Associates will be free to reapply to the board for an appropriate remedy.

The board's order to bargain and post notices is enforced without prejudice to Museum Associates reopening the matter if, in fact, the county has taken over the payment and supervision of the three employee positions in the bargaining unit.