NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

CAREER SYSTEMS DEVELOPMENT
CORPORATION, Respondent.

No. 92–3024.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule 12(6)
Aug. 18, 1992.

Decided Sept. 14, 1992.

Aileen A. Armstrong, Robert N. Herman, Charles P. Donnelly, N.L.R.B., Washington, D.C., for petitioner.

Carl R. Krause, Harris, Beach & Wilcox, Rochester, N.Y., for respondent.

Before: HUTCHINSON, COWEN, and WEIS Circuit Judges.

OPINION OF THE COURT

COWEN, Circuit Judge.

In this case, we must determine whether the National Labor Relations Board

("Board") properly asserted jurisdiction when it found that respondent Career Systems Development Corporation ("Career Systems") engaged in an unfair labor practice by refusing to bargain with an exclusive bargaining representative. We find that the assertion of jurisdiction was proper and will grant the application for enforcement of the Board's order directing Career Systems to bargain.

Career Systems is a for-profit corporation providing education and job training for adults and adolescents at facilities throughout the United States. This case involves Career Systems' operation of the Weaversville Intensive Treatment Center ("Weaversville") in Pennsylvania. Weaversville provides education and treatment for incarcerated and "adjudicated" juveniles, and is operated by Career Systems under a contract with the Pennsylvania Department of Public Welfare ("DPW").

In July 1989, Pennsylvania Social Services Union Local 668 of the Service Employees International Union, AFL–CIO ("union") filed a petition with the Board seeking certification as the collective bargaining representative for a unit composed of Career Systems' professional and non-professional employees. Career Systems opposed the petition on the ground that the company does not exercise sufficient control over the terms and conditions of employment to allow it to engage in meaningful collective bargaining, and thus, the Board should decline to assert jurisdiction over the matter.

Following a hearing, the Board's regional director issued a decision asserting jurisdiction over Career Systems' operation of Weaversville. Career Systems filed a request for review with the Board. In the meantime, the regional director conducted a representation election in which a majority of employees voted for union representation.[1]

In January 1991, the Board agreed with the regional director that Career Systems retains sufficient control over employment matters to allow it to engage in meaningful collective bargaining. In February 1991, the Board certified the union as the exclusive bargaining representative of Career Systems' employees. When Career Systems refused to bargain with the union, the union filed an unfair labor practice charge. In September 1991, the Board found that Career Systems' refusal to bargain violated sections 8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1) & (5) (1988), and ordered Career Systems to bargain with the union. In January 1992, the Board filed an application with this court for enforcement of the order pursuant to section 10(e) of the Act, 29 U.S.C. § 160(e) (1988).

▆▆▆ The central issue in this case is whether Career Systems has sufficient control over the terms and conditions of employment to allow it to engage in meaningful collective bargaining. The Board will not assert jurisdiction in cases in which the control over such matters rests not with the employer but a governmental entity exempt from the Board's jurisdiction. *See Museum Associates v. NLRB*, 688 F.2d 1278, 1280 (9th Cir.1982). However, the employer need not have complete control over *all* terms and conditions of employment for the Board to assert jurisdiction. *See NLRB v. Kemmerer Village, Inc.*, 907 F.2d 661, 664 (7th Cir.1990); *Staff Builders Serv., Inc. v. NLRB*, 879 F.2d 1484, 1487 (7th Cir.1989); *Jefferson County Community Center for Developmental Disabilities, Inc. v. NLRB*, 732 F.2d 122, 126–27 (10th Cir.), *cert. denied*, 469 U.S. 1086, 105 S.Ct. 591, 83 L.Ed.2d 701 (1984).

▆▆▆ The decision to assert or decline jurisdiction rests within the sound discretion of the Board. *NLRB v. Parents & Friends of the Specialized Living Ctr.*, 879 F.2d 1442, 1450 (7th Cir.1989). The employer bears the burden of persuading the Board not to exercise its jurisdiction. *Human Development Ass'n v. NLRB*, 937 F.2d 657, 661 (D.C.Cir.1991), *cert. denied*, — U.S. ——, 112 S.Ct. 1513, 117

---

**1.** Pursuant to 29 U.S.C. § 159(b) (1988), a separate election was held among professional employees as to whether they desired to be included in a bargaining unit with non-professional employees. A majority of professional employees voted for inclusion.

L.Ed.2d 649 (1992). The Board's findings of fact will be upheld if they are "supported by substantial evidence on the record considered as a whole." 29 U.S.C. § 160(e); *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 491, 71 S.Ct. 456, 466, 95 L.Ed. 456 (1951).

In *Res–Care, Inc.,* 280 N.L.R.B. 670 (1986), the Board set forth the criteria by which employer control would be evaluated. Where "ultimate discretion" in the setting of wage rates and fringe benefits rests with the government agency rather than the employer under contract to the agency, the Board will not assert jurisdiction. *Id.* at 673. However, where the government agency merely establishes an overall level of compensation for the employer's performance but not the wage rates and fringe benefits, the Board will assert jurisdiction. The fact that an employer must seek approval from the contracting government agency for any changes in wages and benefits is of no matter. In *Res–Care,* the Board declined to assert jurisdiction.

■ After examining the control exercised by Career Systems over wages and fringe benefits, we agree with the Board that Career Systems retains sufficient control to allow it to engage in meaningful collective bargaining. Although Career Systems is limited in the total amount of money it can spend each year, it has the flexibility to set salaries within this amount without state supervision.[2] Career Systems can also modify benefits or reallocate the cost of benefits without DPW approval as long as overall costs do not increase. As the Court of Appeals for the Seventh Circuit explained, government "control over the employer's total budget is insufficient by itself to exempt it from the NLRB's jurisdiction." *Parents & Friends of the Specialized Living Ctr.,* 879 F.2d at 1454. A set budget merely "define[s] the economic framework with which the [employer] and the Union may conclude their bargaining." *N.L.R.B. v. St. Louis Comprehensive Health Ctr., Inc.,* 633 F.2d 1268, 1271 (8th Cir.1980), *cert. denied,* 454 U.S. 819, 102 S.Ct. 99, 70 L.Ed.2d 89 (1981); *see also Human Development Ass'n,* 937 F.2d at 663 ("[A]n effective ceiling imposed by a public funding scheme does not deprive an employer of the ability to bargain if the employer can set wages at different levels beneath that ceiling.").

Here, Career Systems' ability to follow through on any agreement reached with the union is evidenced by the Board's finding that Career Systems "is free to allocate the [budgeted] money among the various employees and managers as it sees fit." App. at 598. The Board also found that despite the annual budget fixed by the DPW, "excess expenditures in certain budget categories may be offset at the end of the year by unspent monies in other budget categories, or they may be absorbed by the Employer." App. at 593. In fact, on three occasions in 1989, DPW approved requests by Career Systems to increase funds for salaries and benefits without requiring information from Career Systems about the distribution of the funds.[3]

Career Systems has the freedom to hire, fire, promote, and discipline its employees without DPW approval. Control over these aspects of employment is an important factor allowing the employer to engage in meaningful collective bargaining. *See Human Development Ass'n,* 937 F.2d at 664–65. DPW is only involved in the hiring of upper-level management employees, who are not members of the employee bargaining unit.

In contrast, the NLRB's decision not to assert jurisdiction in *Res–Care,* on which Career Systems relies, is easily distinguishable. In *Res–Care,* the governmental entity, the Department of Labor ("DOL"), had the contractual right to approve the employer's wage ranges, including a maxi-

---

**2.** There is no evidence in the record to support Career Systems' assertion that its contract with DPW requires the annual submission of a detailed itemization of employee salaries and benefits.

**3.** Career Systems challenges the significance of these previous funding increases. *See* Pet. Br. at 27–32. We do not find Career Systems' arguments to be persuasive.

mum wage for each job classification, and the substantive terms of benefits, including sick leave pay, vacation accrual, and the number of paid holidays. Any changes in wages and benefits had to be approved by DOL. If the employer paid higher wages or granted more costly benefits, DOL retained the discretion to disallow the additional expenditures. DOL also retained control over general hiring and personnel policies and the actual hiring of employees. After comparing the facts of *Res–Care* and the case now before us, we agree with the Board's finding in this case that "DPW's control over [Career Systems'] general expenditure categories does not amount to a 'final, practical say over wages and benefits' equivalent to that which prompted the Board to decline jurisdiction in *Res–Care.*"[4] App. at 598.

It is obvious that Career Systems, as a contractor for the state, does not operate Weaversville completely free of restraints from DPW. However, the level of supervision DPW exercises over Career Systems does not preclude Career Systems from engaging in good-faith bargaining with the union. Consequently, we hold that the Board properly asserted jurisdiction when it found that Career Systems engaged in an unfair labor practice by refusing to bargain with the union. We will grant the application for enforcement of the Board's order directing Career System to bargain.

---

**4.** In *Res–Care,* the Board specifically noted that government review of an employer's budget did not automatically preclude the exercise of jurisdiction.

Many agencies perform a general review of the budgets of the private employers with whom they contract for services in order to assure that expenditures allocated to the required services are reasonable. Such a review, however, without more, does not sufficiently deprive the employer of ultimate control over essential terms and conditions of employment to preclude it from engaging in meaningful bargaining.

280 N.L.R.B. at 674 n. 22.